**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SEARS, ROEBUCK & COMPANY, a New York company, KCD IP, LLC a Delaware limited liability company, and SEARS INTELLECTUAL PROPERTY MANAGEMENT COMPANY, an Illinois corporation,<br><br>       Plaintiffs,<br>  v.<br><br>COMDOT INTERNET SERVICES PRIVATE LIMITED, a foreign company, and \<craftsmanclub.com\>,<br><br>       Defendants. | FILED: JULY 11, 2008<br>08CV3959<br>JUDGE ST. EVE<br>MAGISTRATE JUDGE VALDEZ<br>YM<br>Case No. |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT**

Plaintiffs Sears, Roebuck & Company ("Sears"), KCD IP, LLC ("KCD"), and Sears Intellectual Property Management Company ("Sears IP Management"), by and through their undersigned counsel, bring this Complaint against defendant Comdot Internet Services Private Limited ("Comdot"), seeking relief pursuant to 15 U.S.C. § 1125(d)(1) for Comdot's bad-faith use and registration of the domain name \<www.crafstmanclub.com\> (the "Infringing Domain Name"). In the alternative, Plaintiffs seek redress through the *in rem* provisions of 15 U.S.C. § 1125(d)(2) against the domain name \<www.crafstmanclub.com\>.

**SUMMARY OF ACTION**

1. This action is brought pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1). KCD is a wholly-owned subsidiary of Sears Brands, LLC, which is in turn wholly-owned by Sears, one of the premier retailers in the United States, and KCD owns the famous CRAFTSMAN® trademark. Sears, pursuant to a license from KCD, sells over 900 classes of CRAFTSMAN® products and over 10,000 individual products bearing

the CRAFTSMAN® name through its retail and Internet stores.  Sears first used the CRAFTSMAN® mark in connection with tools and related products in its 1926-27 Sears catalog.  Since then, Sears has invested billions of dollars promoting its line of CRAFTSMAN® tool products.  Now, after more than 80 years of continuous use by Sears, the CRAFTSMAN® mark is synonymous with tools having dependable quality and outstanding value.

2.     Notwithstanding Plaintiffs' rights to the CRAFTSMAN® mark, without authorization from Plaintiffs, and despite having no legitimate reason to do so, Comdot registered and is using the Infringing Domain Name to promote tools and equipment in direct competition with Sears.  Comdot's use of the CRAFTSMAN® name as part of its Infringing Domain Name used to offer similar tool products with those offered and targeted to an overlapping customer demographic by Sears is likely to cause confusion and violates the ACPA, 15 U.S.C. § 1125(d).

3.     Alternatively, Plaintiff brings this as an *in rem* action under the ACPA, 15 U.S.C. § 1125(d)(2), for injunctive and other relief for Comdot's bad-faith registration and use of the Infringing Domain Name.  Accordingly, the Infringing Domain Name is also named as a defendant in this action.

## THE PARTIES

4.     Plaintiff Sears is a New York company with a principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

5.     Plaintiff KCD is a Delaware corporation with a principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

6.     Plaintiff Sears IP Management is an Illinois corporation with a principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears is the sole shareholder of

2

Sears IP Management.  Pursuant to a management agreement with KCD, Sears IP Management is authorized to prosecute claims regarding infringement of the CRAFTSMAN® mark.

7.       Defendant Comdot is the registrant of record of the Infringing Domain Name. Attached as **Exhibit 1** is a true and correct copy of the WHOIS record for the Infringing Domain Name <crafstmanclub.com>.

8.       Defendant <crafstmanclub.com> is a domain name that Comdot registered through Lead Networks Domains Pvt. Ltd., and, by virtue of its <.com> top level domain extension, resides in the VeriSign, Inc. ("VeriSign") <.com> registry.

## JURISDICTION AND VENUE

9.       Comdot has directed its business activities toward Illinois, because the website associated with the Infringing Domain Name offers tool products that may be purchased by consumers located in Illinois.  Also, upon information and belief, Comdot has offered for sale and sold products offered through the website associated with the Infringing Domain Name to customers located in Illinois.

10.      Upon information and belief, by entering into a registrar agreement with the VeriSign registry, which maintains an office in Illinois, Comdot conducts business within Illinois on a daily basis with VeriSign.

11.      In addition, this Court has *in rem* jurisdiction over the Infringing Domain Name under 15 U.S.C. § 1125(d)(2)(C), because the Infringing Domain Name registrar, VeriSign, is located in this judicial district.

12.      This Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

13.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c) and (d).

14.    Venue is also proper in this district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 1125(d)(2)(C) because the *res*, *i.e.*, the Infringing Domain Name, is presently located in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

### Plaintiff's Famous Marks

15.    Plaintiff Sears has sold products bearing the famous CRAFTSMAN® mark since 1927.

16.    Plaintiff KCD owns numerous federal registrations with the United States Patent and Trademark Office (the "USPTO") for the CRAFTSMAN® mark, and variants thereof, many of which have been in continuous use by Sears for more than 80 years.

17.    Among other applications and registrations, the mark CRAFTSMAN®, U.S. Reg. No. 534,259 (incontestable status), was registered on December 5, 1950 for:

> auger bits, axes, backsaws, breast drills, chisels, files, hack saws, hand saws, hammers, hand hammers, hatchets, planes, pliers, tap and die sets, adjustable end wrenches, adjustable socket wrenches, bit braces, circular saws, cold chisels, hand wrenches, hack saw blades, hack saw frames, hand drills, push drills, screwdrivers, tinners' snips, industrial tool grinders, trowels, twist drills, vises, wood chisels, bench saws, jig saws, lathe planers, spindle shapers, ratchet wrenches, pipe threaders, fret saws, bow saws, woodsmen's saws, dado saws, band saws; axe handles, hammer handles, hatchet handles; work arbors and chucks; lawn mowers, non-power lawn mowers, lawn trimmers, glass cutters; screw plates and sets thereof for thread cutting, [cross rim wrenches,] star drills; adzes, turf edgers; pipe wrenches, pipe cutters, punches; pinch and pry bars, [plasterers' hawks;] screw extractors, screw drivers, bricklayers' hammers; [ball bearing sets;] coping saws, paint sprayers, hand lawn clippers; pocket knives; [scythes, shears,] hedge trimmers, drill presses, belt and disc sanders, hay forks, manure forks, spading forks, garden and lawn rakes, shovels and spades, post hole diggers, weeding hoes, mattock hoes, garden hoes, hand cultivators, garden trowels, [potato hooks,] pruning shears, pruning saws, torque wrenches, [body and fenders hammers, dollies and spoons for reshaping curved metal surfaces,] cleavers, roofing knives, linoleum knives, carving sets, putty knives, butcher knives, bread knives, wall scrapers, plasterers' trowels, paring knives; post hole augers, nail sets, countersink bits, scratch awls, pipe vises; scribers. mechanics' tweezers, jewelers' screwdrivers, jewelers' drill sets, flexible shafts, piston ring

files, cylinder wall ridge reamers, expansion reamers, cylinder grinders, gear pullers, taper reamers, grinding wheels dressers, chalk line reel and line; circle cutters, stud removers, flaring tools (tubing); gasket cutters, ring compressors, piston groove cutters, [bushing punches, bushing driver tools,] lever jaw wrenches, bolt cutters, valve lifters, valve grinders, valve seat reamers, valve seat refacers, tire tools, mechanics' inspection mirrors, rubber mallets; file holders, [steel letters and figures,] bricklayers' chisels, pulleys; razor blades, saw, snip and hammer attachments for power operated drills, chain saws, gasoline powered, clutch aligning tools, axle rethreading dies, brake spring pliers, spring spreaders, pilot bearing pullers, shackle pry bars, tie rod spreaders, shock absorber spreaders, saw mandrels, jack shafts, air hammer, air chisels, pneumatic body and fender sets, drill grinding attachments (holders), razors; long handled floor scrapers, lawn mowers; polishing heads.

18.    A true and correct copy of the CRAFTSMAN® trademark registration certificate as maintained by the USPTO is attached as **Exhibit 2**.

19.    In addition to rights in the United States, the CRAFTSMAN® mark is applied for or registered in over 70 countries throughout the world.

20.    Sears is a licensee of KCD's CRAFTSMAN® family of trademarks.

21.    The CRAFTSMAN® mark represents to the worldwide consuming public the goods offered by Plaintiffs and their affiliates and/or licensees.

22.    Plaintiffs have made extensive use of the CRAFTSMAN® mark by selling hundreds of millions of dollars of products bearing this mark throughout the United States and around the world.  In fact, in 2007, the CRAFTSMAN® brand was named "America's Most Trusted Brand" by Harris Interactive.

23.    Due to the enormous advertising, promotion, and sale of products bearing the CRAFTSMAN® mark in the United States and around the world since 1927, the CRAFTSMAN® mark has become distinctive and famous.

**Defendant's Bad-Faith Registration of the Infringing Domain Name**

24.     Long after Plaintiffs registered CRAFTSMAN® mark became famous in the United States, and without the consent of Plaintiffs and with full knowledge of Plaintiffs' rights in the CRAFTSMAN® mark, Comdot registered the Infringing Domain Name with Lead Networks Domains Pvt. Ltd.

25.     The Infringing Domain Name is a top level domain name ending in <.com>, and as such, it is located in the VeriSign <.com> registry.

26.     Without any intellectual property rights in the CRAFTSMAN® mark, Comdot registered the Infringing Domain Name with the bad-faith intent to profit from the goodwill and value associated with the CRAFTSMAN® mark.

27.     Comdot's registration and use of the Infringing Domain Name were conducted with full knowledge of Plaintiffs' rights in the CRAFTSMAN® mark and motivated by Comdot's desire to confuse Sears' customers and to divert them to tool products offered at the website associated with the Infringing Domain Name.

28.     Defendants have deliberately harmed, and will continue to harm, the goodwill enjoyed by the CRAFTSMAN® mark in the United States among virtually all consumers by creating a false association between the genuine products provided by Plaintiffs and those associated with Comdot.

29.     Comdot registered the Infringing Domain Name with full knowledge of Plaintiffs' intellectual property rights in the CRAFTSMAN® name.

30.     The Infringing Domain Name incorporates Plaintiffs' famous CRAFTSMAN® trademark in its entirety.  Thus, the Infringing Domain Name is confusingly similar to, and

dilutive of, Plaintiffs' famous CRAFTSMAN® mark – and violates Plaintiffs' trademark rights in the CRAFTSMAN® mark in the United States.

31.     The Infringing Domain Name is associated with a pay-per-click website that features links to Sears' competitors and/or links to other websites that advertize or sell competing products.

32.     For example, one of the links prominently presented to an Internet user navigating to the homepage at <craftsmanclub.com> associated with the Infringing Domain Name advertizes a circular saw manufactured by Sears competitor Hilti.  A true and correct printout of the website associated with the Infringing Domain Name advertizing the competing product is attached as **Exhibit 3**.

33.     Comdot is either the actual or beneficial owner of the Infringing Domain Name.

34.     Comdot is using the Infringing Domain Name in conjunction with online advertising for products and businesses that directly compete with Plaintiffs.

35.     Comdot is not affiliated with Plaintiffs and is not authorized to use Plaintiffs' trademarks or to profit from the goodwill Plaintiffs have generated in the CRAFTSMAN® mark.

36.     Comdot has no legitimate reason to use Plaintiffs' CRAFTSMAN® mark in connection with its online commercial activities.

37.     Comdot's use of the Infringing Domain Name, which contains Plaintiffs' CRAFTSMAN® mark in its entirety, results in the likelihood that consumers will mistakenly believe that Comdot is associated, affiliated, or otherwise conducting business with Plaintiffs.

38.     Comdot's conduct was and is intentional, willful, and designed to unlawfully misappropriate and trade off Plaintiffs' goodwill and reputation.

39.    Comdot's acts continue to cause Plaintiffs irreparable harm for which they have no adequate remedy at law.

**Comdot's Pattern of Abusive Domain Name Registrations**

40.    Comdot has engaged in a pattern of bad-faith registrations of domain names incorporating others' famous trademarks, including the following domain names: <cardinalhealthcare.com>, <granger.com>, <ninewestshoes.com>, <sperryshoes.com>, and <swarovski.com>.    True and correct copies of the WIPO and NAF arbitration decisions confirming Comdot's bad-faith registrations and ordering it to transfer the above-referenced domain names are collectively attached as **Exhibit 4**.

**COUNT I**
**Cybersquatting Under the Anticybersquatting Consumer Protection Act**
**Against Comdot**
**(15 U.S.C. § 1125(d)(1))**

41.    Plaintiffs reallege and incorporate by reference paragraphs 1-40 as if fully set forth herein.

42.    The Infringing Domain Name is identical or confusingly similar to Plaintiffs' CRAFTSMAN® mark, which was distinctive and famous at the time Comdot registered the Infringing Domain Name.

43.    Comdot adopted the Infringing Domain Name with a bad-faith intent to profit from Plaintiffs' CRAFTSMAN® mark.

44.    Comdot's use of the Infringing Domain Name has caused, and is likely to continue to cause, irreparable harm to Plaintiffs' goodwill and reputation.

45.    Comdot's actions were willful, and Plaintiffs have no adequate remedy at law.

46.    Comdot's activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

47.     As a result of Comdot's willful and intentional actions, Plaintiffs have incurred attorneys' fees and costs.

48.     As a result of Comdot's willful and intentional actions, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT II**
**(In the Alternative)**
***In Rem* Action Under the Anticybersquatting Consumer Protection Act**
**Against Infringing Domain Name <craftsmanclub.com>**
**(15 U.S.C. § 1125(d)(2))**

49.     Plaintiffs reallege and incorporate by reference paragraphs 1-40 as if fully set forth herein.

50.     Comdot owns no trademark rights in, and no trademark registrations for, the CRAFTSMAN® name in the United States or elsewhere.

51.     Comdot's continued registration and use of the Infringing Domain Name with a bad-faith intent to profit violates 15 U.S.C. § 1125(d)(1) and 1125(d)(2), which protects the owner of U.S. trademarks and prohibits the registration of Internet domain names that are confusingly similar to any trademark, or dilutive of any famous trademark.

52.     As set forth above, and under Section 1125(d)(2)(A)(i), the Infringing Domain Name violates Plaintiffs' rights in connection with the CRAFTSMAN® mark because the Infringing Domain Name is confusingly similar to the CRAFTSMAN® mark and is dilutive of the CRAFTSMAN® mark.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs Sears, Roebuck & Company and KCD IP, LLC respectfully request that this Court enter an order for Plaintiffs and against Defendants as follows:

(a)     Defendant Comdot and its respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and all others in privity or acting in concert with them be preliminarily and permanently enjoined from:

(i)     Using, linking to, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Name or any other domain name or trademark or service mark that incorporates, in whole or in part, Plaintiffs' CRAFTSMAN® mark;

(ii)     Using false representations or descriptions in commerce or using false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Comdot with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant Comdot's services by Plaintiffs;

(iii)     Otherwise infringing Plaintiffs' CRAFTSMAN® mark; and

(iv)     Unfairly competing with Plaintiffs or otherwise injuring their business reputation in any manner;

(b)     The Infringing Domain Name <crafstmanclub.com> be deleted from the root zone server operated and maintained by VeriSign, Inc.;

(c)     VeriSign, Inc. is to cooperate with a registrar to be appointed by Plaintiffs to re-register the Infringing Domain Name <crafstmanclub.com> in Plaintiff KCD's name and under Plaintiff KCD's ownership;

(d)     Defendant Comdot be required to pay to Plaintiffs statutory damages in an amount not less than $100,000 pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

(e)     Defendant Comdot be ordered to pay Plaintiffs their attorneys' fees and costs; and

(f)     Plaintiffs be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

SEARS, ROEBUCK & CO., KCD IP, LLC, and SEARS INTELLECTUAL PROPERTY MANAGEMENT COMPANY

Dated: July 11, 2008

/s/ Paul D. McGrady, Jr.

One of Their Attorneys

Paul D. McGrady, Jr. (ARDC # 6239525)
Jeffery P. Dunning (ARDC # 6273364)
Jeffery G. Mote (ARDC # 6243534)
Jason B. Elster (ARDC # 6289434)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435

*Attorneys for Plaintiffs Sears, Roebuck & Co., KCD IP, LLC and Sears Intellectual Property Management Company*

08CV3959
JUDGE ST.EVE
MAGISTRATE JUDGE VALDEZ
YM

# EXHIBIT 1



**DNS Configured Correctly?**
Test Your External DNS with Free DNS
Advisor Tool from Cricket Liu.

**Real-Time Trace Tools**
· Stand-alone or Network Enabled Tool
· Timesaving DSP Software



**Whois:** craftsmanclub.com          Whois >>

Checking server [whois.crsnic.net]

Checking server [whois.leadnetworks.com]
Results:
Registration Service Provided By: LEAD NETWORKS DOMAINS PVT. LTD
Contact: +91.2226300138

Domain Name: CRAFTSMANCLUB.COM

Registrant:
COMDOT INTERNET SERVICES PRIVATE LIMITED.
COMDOT INTERNET SERVICES PRIVATE LIMITED. (contact@comdotservices.com)
Room No.30, Fatima Bibi Chawl,
Gulshan Nagar,Behram Baug,
Jogeshwari (W),
Mumbai
Maharashtra,400102
IN
Tel. +91.9322160169

Creation Date: 17-Jul-2002
Expiration Date: 17-Jul-2009

Domain servers in listed order:
ns2.sedoparking.com
ns1.sedoparking.com

Administrative Contact:
COMDOT INTERNET SERVICES PRIVATE LIMITED.
COMDOT INTERNET SERVICES PRIVATE LIMITED. (contact@comdotservices.com)
Room No.30, Fatima Bibi Chawl,
Gulshan Nagar,Behram Baug,

Jogeshwari (W),
Mumbai
Maharashtra,400102
IN
Tel. +91.9322160169

Technical Contact:
COMDOT INTERNET SERVICES PRIVATE LIMITED.
COMDOT INTERNET SERVICES PRIVATE LIMITED. (contact@comdotservices.com)
Room No.30, Fatima Bibi Chawl,
Gulshan Nagar,Behram Baug,
Jogeshwari (W),
Mumbai
Maharashtra,400102
IN
Tel. +91.9322160169

Billing Contact:
COMDOT INTERNET SERVICES PRIVATE LIMITED.
COMDOT INTERNET SERVICES PRIVATE LIMITED. (contact@comdotservices.com)
Room No.30, Fatima Bibi Chawl,
Gulshan Nagar,Behram Baug,
Jogeshwari (W),
Mumbai
Maharashtra,400102
IN
Tel. +91.9322160169

Status:LOCKED
Note: This Domain Name is currently Locked. In this status the domain
name cannot be transferred, hijacked, or modified. The Owner of this
domain name can easily change this status from their control panel.
This feature is provided as a security measure against fraudulent domain name
hijacking.

The data in this whois database is provided to you for information purposes only,
that is, to assist you in obtaining information about or related
to a domain name registration record. We make this information available "as is",
and do not guarantee its accuracy. By submitting a whois query, you agree that you will

use this data only for lawful purposes and that, under no circumstances will you use
this data to:
(1) enable high volume, automated, electronic processes that stress
or load this whois database system providing you this information; or
(2) allow, enable, or otherwise support the transmission of mass unsolicited,
commercial advertising or solicitations via direct mail, electronic mail, or by telephone.
The compilation, repackaging, dissemination or other use of this data is expressly
prohibited without
prior written consent from us. The Registrar of record is Lead Networks Domains Pvt.
Ltd.
We reserve the right to modify these terms at any time.
By submitting this query, you agree to abide by these terms.

_____

Results brought to you by the GeekTools Whois Proxy
Server results may be copyrighted and are used with permission.
Proxy © 1999-2005 CenterGate Research Group LLC
Your host (66.151.14.170) has visited 2 times today.

**EXHIBIT 2**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue May 13 04:25:40 EDT 2008*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC

PREV DOC | NEXT DOC | LAST DOC

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: [        ]    OR   Jump | to record: [        ]    **Record 88 out of 94**

TARR Status | ASSIGN Status | TDR | TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

# CRAFTSMAN

| | |
|---|---|
| **Word Mark** | CRAFTSMAN |
| **Goods and Services** | IC 007 008. US 023. G & S: AUGER BITS, AXES, BACKSAWS, BREAST DRILLS, CHISELS, FILES, HACK SAWS, HAND SAWS, HAMMERS, HAND HAMMERS, HATCHETS, PLANES, PLIERS, TAP AND DIE SETS, ADJUSTABLE END WRENCHES, ADJUSTABLE SOCKET WRENCHES, BIT BRACES, CIRCULAR SAWS, COLD CHISELS, HAND WRENCHES, HACK SAW BLADES, HACK SAW FRAMES, HAND DRILLS, PUSH DRILLS, SCREWDRIVERS, TINNERS' SNIPS, INDUSTRIAL TOOL GRINDERS, TROWELS, TWIST DRILLS, VISES, WOOD CHISELS, BENCH SAWS, JIG SAWS, LATHE PLANERS, SPINDLE SHAPERS, RATCHET WRENCHES, PIPE THREADERS, FRET SAWS, BOW SAWS, WOODSMEN'S SAWS, DADO SAWS, BAND SAWS; AXE HANDLES, HAMMER HANDLES, HATCHET HANDLES; WORK ARBORS AND CHUCKS; LAWN MOWERS, NON-POWER LAWN MOWERS, LAWN TRIMMERS, GLASS CUTTERS; SCREW PLATES AND SETS THEREOF FOR THREAD CUTTING, [ CROSS RIM WRENCHES, ] STAR DRILLS; ADZES, TURF EDGERS; PIPE WRENCHES, PIPE CUTTERS, PUNCHES; PINCH AND PRY BARS, [ PLASTERERS' HAWKS; ] SCREW EXTRACTORS, SCREW DRIVERS, BRICKLAYERS' HAMMERS; [ BALL BEARING SETS; ] COPING SAWS, PAINT SPRAYERS, HAND LAWN CLIPPERS; POCKET KNIVES; [ SCYTHES, SHEARS, ] HEDGE TRIMMERS, DRILL PRESSES, BELT AND DISC SANDERS, HAY FORKS, MANURE FORKS, SPADING FORKS, GARDEN AND LAWN RAKES, SHOVELS AND SPADES, POST HOLE DIGGERS, WEEDING HOES, MATTOCK HOES, GARDEN HOES, HAND CULTIVATORS, GARDEN TROWELS, [ POTATO HOOKS, ] PRUNING SHEARS, PRUNING SAWS, TORQUE WRENCHES, [ BODY AND FENDERS HAMMERS, DOLLIES AND SPOONS FOR RESHAPING CURVED METAL SURFACES, ] CLEAVERS, ROOFING KNIVES, LINOLEUM KNIVES, CARVING SETS, PUTTY KNIVES, BUTCHER KNIVES, BREAD KNIVES, WALL SCRAPERS, PLASTERERS' TROWELS, PARING KNIVES; POST HOLE AUGERS, NAIL SETS, COUNTERSINK BITS, SCRATCH AWLS, PIPE VISES; SCRIBERS. MECHANICS' TWEEZERS, JEWELERS' SCREWDRIVERS, JEWELERS' DRILL SETS, FLEXIBLE SHAFTS, PISTON RING FILES, CYLINDER WALL RIDGE REAMERS, EXPANSION REAMERS, CYLINDER GRINDERS, GEAR PULLERS, TAPER REAMERS, GRINDING WHEELS DRESSERS, CHALK LINE REEL AND LINE; CIRCLE CUTTERS, STUD REMOVERS, FLARING TOOLS ( TUBING ); GASKET CUTTERS, RING COMPRESSORS, PISTON GROOVE CUTTERS, [BUSHING PUNCHES, BUSHING DRIVER TOOLS, ] LEVER JAW WRENCHES, BOLT CUTTERS, VALVE LIFTERS, VALVE GRINDERS, VALVE SEAT REAMERS, VALVE SEAT REFACERS, TIRE TOOLS, MECHANICS' INSPECTION MIRRORS, RUBBER MALLETS; FILE HOLDERS, [ STEEL LETTERS AND FIGURES, ] BRICKLAYERS' CHISELS, PULLEYS; RAZOR BLADES, SAW, SNIP AND HAMMER ATTACHMENETS FOR POWER OPERATED DRILLS, CHAIN SAWS, GASOLINE POWERED, CLUTCH ALIGNING TOOLS, AXLE RETHREADING DIES, BRAKE SPRING PLIERS, SPRING SPREADERS, PILOT BEARING PULLERS, SHACKLE PRY BARS, TIE ROD SPREADERS, SHOCK ABSORBER SPREADERS, SAW MANDRELS, JACK SHAFTS, AIR HAMMER, AIR CHISELS, PNEUMATIC BODY AND FENDER SETS, DRILL GRINDING ATTACHMENTS |

(HOLDERS), RAZORS; LONG HANDLED FLOOR SCRAPERS, LAWN MOWERS; POLISHING HEADS. FIRST USE: 19271028. FIRST USE IN COMMERCE: 19271028

| | |
|---|---|
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 71571096 |
| **Filing Date** | December 24, 1948 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 0534259 |
| **Registration Date** | December 5, 1950 |
| **Owner** | (REGISTRANT) SEARS, ROEBUCK AND CO. CORPORATION NEW YORK 3333 BEVERLY RD HOFFMAN ESTATES ILLINOIS 60179 |
| | (LAST LISTED OWNER) KCD IP, LLC LTD LIAB CO DELAWARE 3333 BEVERLY ROAD HOFFMAN ESTATES ILLINOIS 60179 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Kimberly Reddick |
| **Prior Registrations** | 0245809;0306083;0318415;0390878;0426834 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECTION 8(10-YR) 20010215. |
| **Renewal** | 3RD RENEWAL 20010215 |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC

PREV DOC | NEXT DOC | LAST DOC

**EXHIBIT 3**

# CRAFTSMANCLUB.COM

Sponsored listings

## Craftsman Tools
Find Craftsman Tools & Tool Storage at Sears®. Shop Online Now!
www.SEARS.com

## Craftman Tools
Find great deals and save! Compare products, prices & stores
www.Shopping.com

## Crafsman Tool
Bargain Prices. Smart Deals. Save on Crafsman Tool!
Shopzilla.com

## Craftsman Home Blueprints
We Have Over 20,000 Plans & Styles. Find a Great Craftsman Plan Here!
eplans.com

## Tools and Equipment
Over 15,000 Products Available Popular Name Brands-Free Shipping
www.northerntool.com

## Garage Door Openers
Remotes, Keypads, Receivers All Brands And Models In Stock
www.remote4U.com

## Craftman Table Saw
Dogpile.com has all the top search engines piled into one. Try it now.
www.dogpile.com

## Tool Box Decals
SAE, Screwdrivers, Sockets, etc. The Search is Over...Find 'Em Fast!
zcalz.com

## Hilti Circular Saw
Check out the rugged, 15 amp motor circ saw from Hilti for only $159.
www.us.hilti.com/wsc167

## Electric Chainsaws
Save Huge On Electric Chainsaws Buy Electric Chainsaws Now!
Rating-Web.com

**RELATED SEARCHES**

- Tools
- Internet
- MP3s
- Loans
- Jobs
- Music
- Flowers
- Shopping
- Fitness
- Education

 Search

Related Searches: Tools | Internet | MP3s | Loans | Jobs | Music | Flowers | Shopping | Fitness | Education |

# EXHIBIT 4



# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**Cardinal Health Inc. v. Whois Privacy Protection Service Inc / Comdot Internet Services Private Limited**

**Case No. D2008-0213**

## 1. The Parties

The Complainant is Cardinal Health Inc., Dublin, Ohio, United States of America, represented by Bricker & Eckler LLP, United States of America.

The Respondent is Whois Privacy Protection Service Inc / Comdot Internet Services Private Limited, Andheri (West), Mumbai, Maharashtra, India.

## 2. The Domain Name and Registrar

The disputed domain name <cardinalhealthcare.com> is registered with Lead Networks Domains Pvt. Ltd.

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on February 11, 2008. On February 12, 2008, the Center transmitted by email to Lead Networks Domains Pvt. Ltd. a request for registrar verification in connection with the domain name at issue. On February 21, 2008, Lead Networks Domains Pvt. Ltd. transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on February 25, 2008 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amendment to the Complaint on March 3, 2008. The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on March 5, 2008. In accordance with the Rules, paragraph 5(a), the due date for Response was March 25, 2008. The Respondent did not submit any response. Accordingly, the Center notified the Respondent's

default on March 26, 2008.

The Center appointed Nasser A. Khasawneh as the sole panelist in this matter on April 9, 2008. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.


## 4. Factual Background

The Complainant, Cardinal Health is a renowned United States company in the health industry, which develops a wide range of medical and surgical products. The Complainant, through its subsidiary, Cardinal Health Technologies, LLC, owns a number of trademark registrations in the United States for the mark CARDINAL HEALTH as a word mark, design and a service mark, the oldest of which dates back to 1999. The trademark registrations cover a wide range of medical products and services, in various classes. Cardinal Health has also owned and operated under the domain name <cardinal.com> since 1993 and the domain name <cardinalhealth.com> since 1996.

The disputed domain name <cardinalhealthcare.com> was created on January 1st, 2005. In early August 2007, the Complainant became aware that the Respondent had registered the domain name <cardinalhealthcare.com> and used it in connection with a website to display medical themed photographs and provided links to sites offering supply chain services, anti-embolism products and artificial limbs.

On August 16, 2007, the Complainant sent the Respondent a letter advising the Respondent of the Complainant's rights in the Cardinal Health Marks. The Respondent did not respond to the letter, however, the Respondent changed the content appearing on the "www.cardinalhealthcare.com" website to a click-through site.


## 5. Parties' Contentions

### A. Complainant

The Complainant contends the following:

- The Complainant, since 1971 has become dominant in the area of healthcare supply chain services, and that the CARDINAL HEALTH Trademark has become and is associated solely and exclusively with Cardinal Health in the minds of consumers for health care products and services;

- Trademark registration certificates serve as *prima facie* evidence of the validity of the registered trademarks, the Complainant's ownership of the registered trademarks, the Complainant's exclusive right to use the registered trademarks in connection with the goods and services specified in the certificates of registration, as well as constructive notice of the Complainant's claim of ownership under United States law;

- The Respondent had registered the disputed domain name <cardinalhealthcare.com> in an effort to capitalize on the recognition of the Cardinal Health Marks by those seeking information on the products and services provided by the Complainant, through using the disputed domain name in connection with a website, which initially displayed medical-themed photographs, and provided links to sites offering supply chain services, anti-embolism products and artificial limbs;

- In spite of notifying the Respondent that it is infringing on the Trademark Rights of the Complainant, the Respondent continued to use the domain name, but in connection with a more generic click—through website, which nevertheless lured consumers to sponsored links, many of which redirect browsers to competing sites, and as such the Respondent continued to use the disputed domain name in flagrant disregard of the Complainant's objections, and with full knowledge of the Complainant's superior rights in the Cardinal Health Marks;

- Trafficking in domains names that contain the trademarks of others is grounds for finding of bad faith registration and use;

- The Respondent's use of the <cardinalhealthcare.com> domain name containing the Cardinal Health Mark merely to capture customers of Cardinal Health who are seeking information on Cardinal Health products and services is neither a legitimate, nor good faith, use of this domain name. Using a domain name to intentionally attract, for commercial gain,

Internet users to a website by creating confusion with a complainant's mark is evidence of bad faith registration under the Policy;

- The Respondent has no legitimate interest in the disputed domain name <cardinalhealthcare.com> as the Respondent is not a licensee of, or otherwise currently affiliated with the Complainant. Also, the Respondent's name does not include the word "Cardinal";

- The Respondent is capitalizing on the CARDINAL HEALTH trademarks by registering a domain name that incorporates, in its entirety, the Complainant's name "cardinal health" and then profiting from the resulting confused misdirected traffic;

- The Respondent has no rights or legitimate interests in respect to its use of the disputed domain name <cardinalhealthcare.com> as the Respondent's use of the disputed domain to direct traffic to competitive products is not a legitimate use. Moreover, the Respondent clearly has no intention of making any legitimate use of the disputed domain name and refused to turn the domain over to the Complainant. Therefore, the Respondent is knowingly and flagrantly engaged in a transparent attempt to trade off of the Complainant's Marks;

- The Respondent is not using the disputed domain name <cardinalhealthcare.com> in connection with a *bona fide* offering of goods or services. The Respondent's name does not include the words Cardinal or Cardinal Health. All of the content currently on the infringing website is misleading and confusing to consumers. Therefore, the disputed domain name was registered and is being used in bad faith, with a clear intent to profit from the confusion; and

- The Respondent registered the domain name <cardinalhealthcare.com> long after the Complainant's Marks had become famous and long after the Respondent knew of the Complainant's superior and prior rights. Moreover, the Respondent tailored the content on its original website to relate to the Complainant's business and then changed the website content upon receipt of the Complainant's demand letter, all the while continuing to direct browsers to competitors of the Complainant's demonstrates the Respondent's awareness of, and disregard for, Cardinal Health's prior rights.

**B. Respondent**

The Respondent did not reply to the Complainant's contentions.

**6. Discussion and Findings**

**A. Identical or Confusingly Similar**

The Panel finds that the disputed domain name is confusingly similar to trademarks in which the Complainant has rights; the disputed domain name <cardinalhealthcare.com> fully incorporates the trademark CARDINAL HEALTH, in respect of which the Complainant holds various trademark and service mark registrations, whether as a logo or word mark.

The Panel is convinced that the full incorporation of the trademark in the domain name is sufficient to make a finding of confusion between the trademark and the domain name, and that the addition of the generic term "care" is not sufficient to eliminate confusing similarity with the Complainant's registered trademarks. Moreover, the added word in this particular case "care" adds emphasis on the nature of the products and services that the Complainant's trade and service marks are being used in connection with.

Various WIPO Panel decisions have held that the addition of the generic terms to the domain name in dispute has little, if any, effect on a determination of whether the disputed domain name is identical or confusingly similar to a trademark. These include the decisions in *Quixar Investments Inc. v. Dennis Hoffman*, WIPO Case No. D2000-0253; *Dell Inc. v. George Dell and Dell Net Solutions*, WIPO Case No. D2004-0512 and *Wal-Mart Stores, Inc. v. Richard MacLeod d/b/a For Sale*, WIPO Case No. D2000-0662.

The fact that the trademarks in this case are registered in the name of the subsidiary of the Complainant does not affect the ownership rights of the Complainant in the respective trademarks; previous WIPO panels have found that in appropriate circumstances a related company such as a subsidiary or parent to the registered holder of a mark may be considered to have rights in a trademark under the UDRP. Such view was upheld by the panel in *Telcel, C.A. v. jerm and Jhontattan Ramirez*, WIPO Case No. D2002-0309, and the panel in *Toyota Motor Sales U.S.A, Inc. v. J. Alexis Productions*, WIPO Case No. D2003-0624, and *Grupo Televisa, S.A., Televisa, S. A.de C.V., Estrategia Televisa, S.A. de C.V., Videoserpel, Ltd. v. Party Night Inc., a/k/a Peter Carrington*, WIPO Case No. D2003-0796.

Consequently, the Panel finds for the Complainant on the first element of the Policy.

**B. Rights or Legitimate Interests**

The Complainant contends that the Respondent does not have rights in the disputed domain name <cardinalhealthcare.com>, as the domain name is not part of the Respondent's name, and the Respondent is not affiliated with the Complainant, nor does it have a license from the Complainant.

Considering that the Complainant holds various trademark and service mark registrations in the words "cardinal health", in addition to using the same marks as a domain name to establish presence on the World Wide Web, the Panel accepts that the Complainant has developed considerable reputation in the CARDINAL HEALTH trademarks. The Respondent is using the disputed domain name to provide a click through service to websites that appear to compete directly with the Complainant's website, and it had initially used it to display content clearly similar to that of the Complainant's in a very confusing manner. The panel in *Adobe Systems Incorporated. v. Domain OZ*, WIPO Case No. D2000-0057 stated that mere use of the disputed domain names to attract customers, for commercial gain, to a respondent's website by creating consumer confusion with a complainant's trademarks would not, if such use were demonstrated, establish rights or legitimate interests in the domain names on the part of a respondent. Furthermore, it has been held by several WIPO panels that use of a domain name to provide click-through sponsored links to another website does not of itself grant the registrant rights or legitimate interests in the domain name. Such decisions include *MBI, Inc. v. Moniker Privacy Services/Nevis Domains LLC*, WIPO Case No. D2006-0550, and *Royal Bank of Canada v. Henry Chan* WIPO Case No. D2003-0031 and *The Knot, Inc. v. Ali Aziz*, WIPO Case No. D2007-1006.

Given that the Respondent has failed to respond to the Complainant's contentions, he has not provided the Panel with any evidence of a demonstrable preparation to use the disputed domain name for a *bona fide* offering of goods or services. The Respondent is apparently not commonly known by the disputed domain name and, as already noted, the Respondent is not making a legitimate non-commercial use of <cardinalhealthcare.com>.

Based on this analysis the Panel finds for the Complainant on the second element of the Policy.

**C. Registered and Used in Bad Faith**

Paragraph 4(b) of the Policy provides a list of indicative circumstances that suggest bad faith registration, however such list is not exhaustive and a finding of registration in bad faith depends on the circumstances of the case.

In this case, the Panel is of the view that, on a balance of probabilities, the Respondent was and is aware of the good will and fame of the service mark CARDINAL HEALTH, particularly in light of the fact that the domain name was registered a while after the date of the earlier registrations of the trademark in the name of the Complainant. Not only that, the Respondent was notified in writing by the Complainant that his use of the disputed domain name constitutes an infringement on the Complainant's rights in the trademark CARDINAL HEALTH.

Various WIPO panels have found that the registration of a domain name, which incorporates a widely known trademark may (particularly in the absence of any explanation) constitute evidence of bad faith, such decisions include *Veuve Clicquot Ponsardin, Maison Fondée en 1772 v. The Polygenix Group Co.*, WIPO Case No. D2000-0163, *Telstra Corporation Limited v. Nuclear Marshmallows*, WIPO Case No. D2000-0003, and *AT&T Corp. v. John Zuccarini d/b/a Music Wave and RaveClub Berlin*, WIPO Case No. D2002-0440.

Moreover, it is clear that the Respondent is using the domain name to create confusion with the Complainant's association with the sponsored links, and most likely for financial gain, through receiving fees for the clicks it receives on its website, which direct browsers to websites of competitors to the Complainant; Some WIPO panels labeled such actions as "opportunistic bad faith", such as the panel of *Research in Motion Limited v. Dustin Picov*, WIPO Case No. D2001-0492.

In this case, the Complainant has demonstrated that its Mark CARDINAL HEALTH is a widely known mark, and in view of the above, the Panel finds for the Complainant on the third element of the Policy, particularly in light of the fact that the Respondent was put on notice that he is infringing on the rights of the Complainant, and yet continued to use the disputed domain name in this manner.

**7. Decision**

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the domain name, <cardinalhealthcare.com> be transferred to the Complainant.

---

Nasser A. Khasawneh
Sole Panelist

Dated: April 23, 2008

# NATIONAL ARBITRATION FORUM

## DECISION

W.W. Grainger, Inc. v. COMDOT INTERNET SERVICES PRIVATE LIMITED.
Claim Number: FA0710001089065

### PARTIES

Complainant is **W.W. Grainger, Inc.** ("Complainant"), represented by **Aimee M. Nolan**, of **W.W. Grainger, Inc.**, 100 Grainger Parkway, Lake Forest, IL 60045.  Respondent is **COMDOT INTERNET SERVICES PRIVATE LIMITED.** ("Respondent"), 18/20 Akshay Co-Op. Soc, S.V. Patel Nagar,Mahada Versova, Andheri (W), Mumbai, Maharashtra 400053, IN.

### REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is **<wwwgranger.com>**, registered with **Lead Networks Domains Pvt. Ltd**.

### PANEL

The undersigned certifies that he has acted independently and impartially and to the best of his knowledge has no known conflict in serving as Panelist in this proceeding.

Bruce E. O'Connor as Panelist.

### PROCEDURAL HISTORY

This decision is being rendered in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the National Arbitration Forum's UDRP Supplemental Rules (the "Supplemental Rules").

Complainant submitted a Complaint to the National Arbitration Forum electronically on October 4, 2007; the National Arbitration Forum received a hard copy of the Complaint on October 5, 2007.  On October 24, 2007, the National Arbitration Forum notified Complainant of deficiencies in the Complaint, and requested submission of an Amended Complaint.

On October 24, 2007, Lead Networks Domains Pvt. Ltd. confirmed by e-mail to the National Arbitration Forum that the **<wwwgranger.com>** domain name is registered with Lead Networks Domains Pvt. Ltd. and that the Respondent is the current registrant of the name.  Lead Networks Domains Pvt. Ltd. has verified that Respondent is bound by the Lead Networks Domains Pvt. Ltd. registration agreement and has thereby agreed to resolve domain-name disputes brought by third parties in accordance with the Policy.

On October 29, 2007, the National Arbitration Forum received electronic and hard copies of the Amended Complaint.

On October 30, 2007, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of November 19, 2007 by which Respondent could file a Response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@wwwgranger.com by e-mail.

A Response was received on November 22, 2007. The Response was deficient under ¶ 5(a) of the Rules as it was received after the Response deadline.

On November 28, 2007, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed Bruce E. O'Connor as Panelist.

## RELIEF SOUGHT
Complainant requests that the domain name at issue be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS
### A. Complainant
Complainant contends that, for at least eighty (80) years, its primary corporate name, primary trademark and house mark has been GRAINGER, or slight variations thereof. Complainant contends that for at least eleven (11) years, it has used the trademark GRAINGER.COM. Complainant contends that it has used and continues to use the trademarks GRAINGER and GRAINGER.COM (the "Trademarks") in connection with supplying facilities maintenance products to businesses and institutions.

Complainant claims ownership of numerous trademark registrations for the Trademarks, including U.S. Registrations Nos. 1,559,199, 1,747,557, 2,039,641, 2,128,519, 2,194,993, 2,519,045, 2,998,326, 3,053,642, 3,130,982, 3,130,983, 3,256,911, and 3,256,912, and India Registration Nos. 334,538 and 437,017.

Complainant contends that it owns the domain name <grainger.com>, and uses that domain name at a Website.

Complainant supports these contentions by a list of its worldwide registrations for the Trademarks, by copies of the noted registrations, and by a copy of a WHOIS listing for its domain name registration.

Complainant argues that the domain name at issue is confusingly similar to the Trademarks and to its domain name.

In support of this argument, Complainant contends that the domain name at issue is nearly identical to the Trademarks with only minor typographical errors. Complainant contends that the domain name at issue is a common mistake made by many people who inadvertently omit the period after "WWW" and the letter "I" when attempting to visit Complainant's Web site at <www.grainger.com>. Complainant cites various cases for the proposition that it is well-settled that a misspelling of a trademark is not a sufficient difference to ameliorate confusion.

In support of this argument, Complainant contends that the Respondent has engaged in typosquatting, a practice in which a registrant deliberately introduces slight deviations into famous marks for commercial gain. Complainant cites various cases for this proposition.

Complainant argues that Respondent has no legitimate interests in the domain name at issue. Complainant bases this argument partly upon the prior statutory and common law rights in the Trademarks, established by Complainant's contended continuous use of the marks in commerce for many years.

Complaint also argues that Respondent has not used the domain name at issue for any legitimate purpose, and, upon information and belief, has no intention of using the domain name at issue as anything other than a parked page to generate income.

Complainant cites a case for the proposition that the mere registration of a domain name is insufficient to confer rights or legitimate interests in the domain name.

Complainant points out that the similarity of the domain name at issue to the Trademarks and the lack of use of a Web site employing that domain name supports a finding that Respondent's use of the domain name is not a *bona fide* offering of goods or services. Complainant cites various cases for this proposition.

Complainant contends, on information and belief, that Respondent's only use of the domain name is as an Internet portal to divert Internet users to numerous third party web sites. In support of this contention, Complainant provides numerous pages found at a Web site employing the domain name at issue. Complainant cites various cases for the proposition that redirection of Internet users is not a *bona fide* offering of goods and services and that diversion of Internet users does not establish rights or legitimate interests in a domain name.

Complainant contends that the identity of Respondent is unknown, and supports this contention by a copy of the WHOIS listing for the domain name at issue where the name of the registrant is protected by WHOIS privacy protection. Respondent cites a case for this proposition. In its amended Complaint, Complainant submits another copy of a WHOIS listing for the domain name at issue that identifies Respondent. Complainant contends that Respondent is not commonly known by the domain name at issue.

Complainant argues that Respondent has registered and used the domain name at issue in bad faith.

In support of this argument, Complainant cites various cases for the proposition that providing links to third party web sites makes it clear that a respondent obtained and used a domain name for the bad faith purpose of intentionally attempting to attract users to its Web site by creating a likelihood of confusion with the complainant's trademark.

Complainant also contends that, upon information and belief, Respondent receives click-through fees for diverting Internet users to third party Web sites. Complainant cites a case for the proposition that such click-through fees can be inferred from third party links.

Complainant also contends that the similarity between the domain name at issue and the Trademarks, and the lack of any legitimate interest, establish the intentional trading off on the part of the Respondent of the Trademarks in bad faith.

B. Respondent
Respondent argues that the Complaint is misconceived and not maintainable and should be dismissed.

Respondent reserves the right to go to court as provided in ¶ 4(k) of the Rules, for independent resolution of the dispute.

Respondent argues that the case suffers from gross procedural anomalies and should be dismissed on that ground alone.

Respondent reserves the right to go to court as provided in ¶ 20 of the Rules, for deliberate wrongdoing by the provider.

Respondent contends that it has not received any notification of commencement of the case from the provider.

Respondent contends that on November 14, 2007, it approached the registrar of the domain name at issue to unlock the domain name, as the case had not yet commenced. According to Respondent, the registrar informed that the case has commenced and the domain name could not be unlocked and eventually informed the Respondent to directly contact the provider.

Respondent contends that it sent an e-mail to the provider inquiring about the case. According to the Respondent, it received a reply from the National Arbitration Forum on November 15, 2007, informing the Respondent that the Response deadline was November 19, 2007.

Respondent argues that since the case and notice of commencement has been served on it only on November 15, 2007, it should be given the mandatory time of 20 days to respond and that it right to be heard and to file a proper reply has been violated by the provider.

Respondent argues that the Complaint should be dismissed because proper procedure has not been followed.

Respondent denies each and every allegation, submission and contentions in the Complaint and puts the Complainant to the strict proof thereof.

Respondent contends that it purchased the domain name at issue for a client a few years ago. According to Respondent, the client did not pay for the domain name so that the Respondent owns the domain name and maintains the domain name as it feels that the client might otherwise register the domain name.

Respondent contends that it is not aware that the Complainant has rights in the mark GRAINGER.

Respondent denies that the domain name at issue is confusingly similar to the mark GRAINGER. In support of this argument, Respondent contends that the domain name at issue is not nearly identical to the Trademarks. Respondent contends that Complainant does not own the domain <www.granger.com> or the mark GRANGER.COM which can be said to be close to the domain name at issue. Based on this contention, Respondent argues that Complainant cannot claim that the Trademarks are violated by the domain name at issue or that there is a likelihood of Internet users being confused.

Respondent argues that it has not engaged in typosquatting.

Respondent contends that it registered the domain name at issue for a client and that the client should be using the domain name. Respondent contends that there are four letters difference between the Trademarks and the domain name at issue, which is a major difference for any knowledgeable person using the Internet to make a mistake.

Respondent contends it used the Private WHOIS service to prevent Spam and other marketing which is done by data miners.

Respondent argues that it has not committed any act of bad faith. In support of this argument, Respondent contends that there is no Web site using the domain name at issue and that the domain name has not been used to attract the customers of Complainant to divert those customers to Complainant's competitors.

Respondent again argues that Complainant is not entitled to the disputed domain. According to Respondent, if Complainant were so entitled, it would first have proceeded against the owner of the domain <granger.com> and later against Respondent.

Respondent argues that it has proved its rights and legitimate interest in the domain name at issue, and proved that it paid a valuable consideration for the domain name.

Respondent contends that its Web site does not offer goods and services of the competitors of Complainant so that there is no evidence of bad faith.

## FINDINGS

The procedural service ground raised by Respondent requires discussion and decision. The Panel has reviewed documents provided by the National Arbitration Forum regarding the acts taken by the National Arbitration Forum and the Complainant to commence this proceeding, and is satisfied that the service requirements of ¶ 2(a) of the Rules and ¶ 3(b)(xii) and 4(e)(1) of the Supplemental Rules have been followed. Respondent's request to dismiss the Complaint on this ground is denied.

As noted in the procedural history, Respondent's Response was not timely. Therefore the Panel has sole discretion as to the amount of weight given to the Response. *See Telstra Corp. v. Chu*, D2000-0423 (WIPO June 21, 2000) (finding that any weight to be given to the lateness of the response is solely in the discretion of the panelist). Given that the Response was only three days late and was detailed in its arguments and contentions, the Panel exercises its discretion and admits the Response in its entirety. *See Bd. of Governors of the Univ. of Alberta v. Katz*, D2000-0378 (WIPO June 22, 2000) (finding that a panel may consider a response which was one day late, and received before a panelist was appointed and any consideration made); *see also Gaiam, Inc. v. Nielsen*, FA 112469 (Nat. Arb. Forum July 2, 2002) ("In the interest of having claims decided on the merits and not by default and because Complainant has not been prejudiced in the presentation of its case by the late submission, Respondent's opposition documents are accepted as timely.").

There being no other alleged procedural errors in this case, the Respondent's request to dismiss the Complaint on gross procedural anomalies is denied.

The Panel acknowledges the Respondent's reservation of rights under ¶ 4(k) of the Policy and ¶ 20 of the Rules, and notes that such reservation has no bearing on the issues or decision in this

case.

The certification required by ¶ 3(b)(xiv) of the Rules is the minimum to demonstrate the admissibility of the factual contentions made by a complainant, and the certification required by ¶ 5(b)(viii) of the Rules is the minimum to demonstrate the admissibility of the factual contentions made by a respondent. Without certification, a Panel may choose not to consider any factual statements, even in the case of *pro se* parties.

The Panel gives weight only to those admissible factual contentions that are verified by the documents attached to the submissions, or by affidavits or declarations, or that are admitted by the other party, or of which the Panel can take administrative notice, in accordance with the Panel's powers under Paragraph 10(d) of the Rules.

In this case, Complainant has provided the required ¶ 3(b)(xiv) certification, and additional documents and declarations. The Panel finds that all of the factual contentions made by Complainant are admissible and will be given weight as appropriate.

Respondent has provided the required ¶ 5(c)(vii) certification, but no other documents or declarations. The Panel finds that all of the factual contentions made by Respondent are admissible, and will be given weight as appropriate.

## DISCUSSION

¶ 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

¶ 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(i)   the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;
(ii)  the Respondent has no rights or legitimate interests in respect of the domain name; and
(iii) the domain name has been registered and is being used in bad faith.

### Identical and/or Confusingly Similar

The Panel finds that Complainant has established rights in the Trademarks, through proof of its ownership of numerous trademark registrations, including U.S. Trademark Registration No. 1,559,199 that protects the mark GRAINGER for "catalog services ..." and No. 2,194,993 that protects the mark GRAINGER.COM for "on-line catalog services..." and India Trademark Registration No. 334,538 that protects the mark GRAINGER for "printed matter..."

Respondent's claimed ignorance of the Trademarks is no defense, given the existence of these trademark registrations. Most of the registrations predate Respondent's registration of the domain name at issue on December 16, 2005.

The Panel finds that the domain name at issue incorporates Complainant's mark GRAINGER.COM, simply adding "www" at the beginning and deleting the "i" from the middle of the mark. The Panel concludes that the domain name is confusingly similar to Complainant's GRAINGER.COM mark under Policy ¶ 4(a)(i), as these slight edits fail to distinguish the disputed domain name from Complainant's mark. *See Marie Claire Album v. Blakely*, D2002-

1015 (WIPO Dec. 23, 2002) (holding that the letters "www" are not distinct in the "Internet world" and thus the respondent 's <wwwmarieclaire.com> domain name is confusingly similar to the complainant's MARIE CLAIRE trademark); *see also State Farm Mut. Auto. Ins. Co. v. Try Harder & Co.*, FA 94730 (Nat. Arb. Forum June 15, 2000) (finding that the domain name <statfarm.com> is confusingly similar to the complainant's STATE FARM mark).

The Panel also finds that the domain name at issue incorporates Complainant's mark GRAINGER, being distinguished also by the addition of the generic and top-level domain ".com". *See Pomellato S.p.A v. Tonetti*, D2000-0493 (WIPO July 7, 2000) (finding <pomellato.com> identical to the complainant's mark because the generic top-level domain (gTLD) ".com" after the name POMELLATO is not relevant); *see also Blue Sky Software Corp. v. Digital Sierra, Inc.*, D2000-0165 (WIPO Apr. 27, 2000) (holding that the domain name <robohelp.com> is identical to the complainant's registered ROBOHELP trademark, and that the "addition of .com is not a distinguishing difference").

The Panel finds that the domain name at issue takes advantage of a common typing error, by omitting the period that normally comes between the "www" and the rest of a domain name, a practice commonly known as "typosquatting." *See Marriott Int'l, Inc. v. Seocho*, FA 149187 (Nat. Arb. Forum Apr. 28, 2003) (finding <mariottt.com> confusingly similar to MARIOTT.COM; *see also Bank of Am. Corp. v. InterMos*, FA 95092 (Nat. Arb. Forum Aug. 1, 2000) (finding <wwwbankofamerica.com> confusingly similar to BANK OF AMERICA, as it only eliminated the period after the "www", taking advantage of a common typing error); *see also ESPN, Inc. v. XC2*, D2005-0444 (WIPO June 28, 2005) (finding that adding a second "n" to the domain name <espnnews.com> constituted typosquatting which by definition is confusingly similar to the mark ESPN).

Respondent's denial of typosquatting is without factual or legal support.

One of Respondent's defenses is the contention that there are four letters difference between the Trademarks and the domain name at issue, which is a major difference for any knowledgeable person using the Internet to make a mistake. The Panel must consider, however, not only the number of letters but also the identity of the letters. Choice of "www," the well-known acronym for "World Wide Web," as three of the four letters makes it almost certain that confusion will result.

Another of Respondent's defenses is the contention that Complainant does not own the domain name <www.granger.com> or the mark GRANGER.COM. Respondent does not provide any
[i]
factual support for this contention.

A final defense of Respondent is that it registered the domain name at issue for a client. That contention, even if supported, is irrelevant to the issue of confusing similarity.

The Panel thus finds that the domain name at issue is confusingly similar to the Trademarks. Complainant has met its burden of proof under ¶ 4(a)(i) of the Policy.

### Rights or Legitimate Interests
Once Complainant makes a *prima facie* case in support of its allegations, the burden shifts to Respondent to show that it does have rights or legitimate interests pursuant to Policy ¶ 4(a)(ii). *See Do The Hustle, LLC v. Tropic Web*, D2000-0624 (WIPO Aug. 21, 2000) (holding that, where the complainant has asserted that the respondent has no rights or legitimate interests with respect

to the domain name, it is incumbent on the respondent to come forward with concrete evidence rebutting this assertion because this information is "uniquely within the knowledge and control of the respondent"); *see also Clerical Med. Inv. Group Ltd. v. Clericalmedical.com*, D2000-1228 (WIPO Nov. 28, 2000) (finding that, under certain circumstances, the mere assertion by the complainant that the respondent has no right or legitimate interest is sufficient to shift the burden of proof to the respondent to demonstrate that such a right or legitimate interest does exist).

¶ 4(c) of the Policy lists three circumstances in particular, without limitation, that demonstrate rights or legitimate interest of a domain name registrant to a domain name, for the purposes of ¶ 4(a)(ii) of the Policy:

(i)       before any notice of the dispute, the Respondent's use of, or demonstrable preparations to use the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods and services; or
(ii)      the Respondent, as an individual, business, or other organization, has been commonly known by the domain name, even if no trademark or service mark rights have been acquired; or
(iii)     the Respondent is making a legitimate non-commercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

Respondent does not argue or contend, and Complainant has established, that Respondent is not commonly known by the domain name at issue.  The Panel thus finds that Respondent has not established the circumstances of Policy ¶ 4(c)(ii).

Complainant contends that Respondent uses the disputed domain name to generate pay-per-click revenue to third party advertisers, from each diverted Internet user who clicks on one of the hyperlinks on the Web site using the domain name at issue to various third-party websites. Although the Respondent includes a general denial of all of Complainant's contentions, it does not specifically deny this contention of Complainant or provide any reason why its domain name is used at a Web site that includes hyperlinks.

The Panel finds Respondent's activity demonstrates neither a Policy ¶ 4(c)(i) *bona fide* offering of services or goods nor a Policy ¶ 4(c)(iii) noncommercial or fair use.  *See Wells Fargo & Co. v. Lin Shun Shing*, FA 205699 (Nat. Arb. Forum Dec. 8, 2003) (finding that using a domain name to direct Internet traffic to a website featuring pop-up advertisements and links to various third-party websites is neither a *bona fide* offering of goods or services under Policy ¶ 4(c)(i) nor a legitimate noncommercial or fair use under Policy ¶ 4(c)(iii) because the registrant presumably receives compensation for each misdirected Internet user)); *see also WeddingChannel.com Inc. v. Vasiliev*, FA 156716 (Nat. Arb. Forum June 12, 2003) (finding that the respondent's use of the disputed domain name to redirect Internet users to websites unrelated to the complainant's mark, websites where the respondent presumably receives a referral fee for each misdirected Internet user, was not a *bona fide* offering of goods or services as contemplated by the Policy).

The Panel's finding of typosquatting requires a finding that the nature of the domain name in dispute itself indicates that Respondent has no rights or legitimate interests in the domain name. *See Diners Club Int'l Ltd. v. Domain Admin******It's all in the name*******, FA 156839 (Nat. Arb. Forum June 23, 2003) (holding that the respondent's <wwwdinersclub.com> domain name, a typosquatted version of the complainant's DINERS CLUB mark, was evidence in and of itself that the respondent lacks rights or legitimate interests in the disputed domain name vis á vis the complainant); *see also Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Zuccarini*, D2002-1011 (WIPO Jan. 21, 2003) ("Typosquatting … as a means of redirecting consumers against their will

to another site, does not qualify as a bona fide offering of goods or services, whatever may be the goods or services offered at that site.").

The Panel thus finds that Respondent has not demonstrated any rights or legitimate interest in the domain name at issue.  Complainant has met its burden of proof under ¶ 4(a)(ii) of the Policy.

### Registration and Use in Bad Faith
The circumstances of ¶ 4(b) of the Policy are illustrative but not exhaustive of the circumstances under which bad faith registration and use under ¶ 4(a)(iii) of the Policy can be established.

¶ 4(b) of the Policy reads:

[T] he following circumstances, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith:

(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name; or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location.

Proof of ¶ 4(a)(iii) generally requires more than assertions of bad faith. *See Starwood Hotels & Resorts Worldwide, Inc. v. Samjo CellTech.Ltd*, FA 406512 (Nat. Arb. Forum Mar. 9, 2005) (finding that the complainant failed to establish that respondent registered and used the disputed domain name in bad faith because mere assertions of bad faith are insufficient for a complainant to establish Policy ¶ 4(a)(iii)); *see also Graman USA Inc. v. Shenzhen Graman Indus. Co.* FA 133676 (Nat. Arb. Forum Jan. 16, 2003) (finding that general allegations of bad faith without supporting facts or specific examples do not supply a sufficient basis upon which the panel may conclude that the respondent acted in bad faith).

Respondent is capitalizing on the confusion caused by the disputed domain name's similarity to the Trademarks by diverting Internet users to third-party websites for the purpose of generating click-through revenue.  Further, Internet users seeking out Complainant's services or goods are likely to be confused as to Complainant's association with the disputed domain name.

The Panel finds this behavior indicates that Respondent registered and is using the disputed domain name in bad faith as contemplated by Policy ¶ 4(b)(iv).  *See Kmart v. Khan*, FA 127708 (Nat. Arb. Forum Nov. 22, 2002) (finding that if the respondent profits from its diversionary use

of the complainant's mark when the domain name resolves to commercial websites and the respondent fails to contest the complaint, it may be concluded that the respondent is using the domain name in bad faith pursuant to Policy ¶ 4(b)(iv)); *see also Drs. Foster & Smith, Inc. v. Lalli*, FA 95284 (Nat. Arb. Forum Aug. 21, 2000) (finding bad faith where the respondent directed Internet users seeking the complainant's site to its own website for commercial gain).

Additionally, the Panel's finding of typosquatting requires a finding of bad faith registration and use under Policy ¶ 4(a)(iii). *See Black & Decker Corp. v. Khan*, FA 137223 (Nat. Arb. Forum Feb. 3, 2003) (finding the <wwwdewalt.com> domain name was registered to "ensnare those individuals who forget to type the period after the 'www' portion of [a] web-address," which was evidence that the domain name was registered and used in bad faith); *see also Nat'l Ass'n of Prof'l Baseball League, Inc. v. Zuccarini*, D2002-1011 (WIPO Jan. 21, 2003) ("Typosquatting … is the intentional misspelling of words with [the] intent to intercept and siphon off traffic from its intended destination, by preying on Internauts who make common typing errors. Typosquatting is inherently parasitic and of itself evidence of bad faith.").

Respondent's contentions are unpersuasive.  Respondent first contends that there is no Web site using the domain name at issue, but then admits that there is a Web site that does not offer goods and services of competitors of Complainant.  An examination of Respondent's Web site shows that the services being offered through third party hyperlinks come within the description of services and goods in Complainant's trademark registrations (including catalog services and printed matter).

Respondent's payment of valuable consideration for the domain name at issue is irrelevant to the issue of bad faith.

Finally, Respondent's contention that a third party owns the granger domain is unproven and not material to the issue of bad faith in the absence of evidence that GRANGER or
[ii]
GRANGER.COM are trademarks of third parties.

The Panel finds that Complainant has met its burden of proof under ¶ 4(a)(iii) of the Policy.


**DECISION**

Complainant having established all three elements required under the Policy, the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is Ordered that the **<wwwgranger.com>** domain name be **TRANSFERRED** from Respondent to Complainant.


Bruce E. O'Connor Panelist
Dated: December 12, 2007

<u>Click Here</u> to return to the main Domain Decisions Page.

<u>Click Here</u> to return to our Home Page

## NATIONAL ARBITRATION FORUM

---

[i]
     On its own, the Panel has discovered that the domain name <granger.com> is owned by a third party (according to the WHOIS record, Datagram Corp.) and is being used as part of the URL <www.granger.com>.  A Web site accessed through that URL is operated by The Granger Collection. The Web site does not use the marks GRANGER or GRANGER.COM, but rather the mark THE GRANGER COLLECTION, for the service of providing a library of digital photographic images.  The Panel has been unable to find any trademark registrations owned by Datagram Corp or The Granger Collection for the marks GRANGER or GRANGER.COM.  In the absence of any evidence of registration or use of the marks GRANGER OR GRANGER.COM, the Panel gives no weight to the contention of Respondent.
[ii]
     The Panel speculates that Respondent (or its "client") was trying to capitalize on the domain name <granger.com> and the URL <www.granger.com> by registering and using the domain name at issue. This speculation is based on the specific nature of the hyperlinks on Respondent's Web site, most of which are directed to graphics and images and related services, of the type available on the Web site at <www.granger.com>.  Nonetheless, Complainant has proven violation of the Policy by Respondent. Two wrongs do not give Respondent the right to prevail in this proceeding.



# WIPO Arbitration and Mediation Center

### ADMINISTRATIVE PANEL DECISION

**Nine West Development Corporation v. Private Whois for Ninewestshoes.com/Comdot Internet Services Private Limited.**

**Case No. D2007-1723**

### 1. The Parties

The Complainant is Nine West Development Corporation, Wilmington, Delaware, United States of America, represented by its internal representative.

The Respondent is Private Whois for Ninewestshoes.com/Comdot Internet Services Private Limited., Mumbai, Maharashtra, India.

### 2. The Domain Name and Registrar

The disputed domain name <ninewestshoes.com> is registered with Lead Networks Domains Pvt. Ltd..

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on November 21, 2007. On November 23, 2007, the Center transmitted by email to Lead Networks Domains Pvt. Ltd. a request for registrar verification in connection with the domain name at issue. On December 5, 2007, Lead Networks Domains Pvt. Ltd. transmitted by email to the Center its verification response disclosing registrant and contact information for the domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on December 5, 2007, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amendment to the Complaint on December 5, 2007. The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on December 7, 2007. On December 19, 2007, the Respondent contacted the Centre to

Case 1:08-cv-03359 Document 1-2     Filed 07/11/2008     Page 27 of 39

enquire about the procedure in case it needed further time to file a response. The Centre replied by email the necessary information. Since then, there does not appear to have been any communication from the Respondent. In accordance with the Rules, paragraph 5(a), the due date for Response was December 27, 2007. The Respondent did not submit a response within that time limit. Accordingly, the Center notified the Respondent's default on December 28, 2007. The Respondent subsequently submitted a late reply by email on January 3, 2008.

The Center appointed Adam Samuel as the sole panelist in this matter on January 7, 2008. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant owns a number of US trademark registrations for the marks NINE WEST and 9 WEST, going back to 1992 and 1981 respectively. The disputed domain name was registered on June 15, 2000.

## 5. Parties' Contentions

### A. Complainant

The Complainant's submissions are set out in this section. They do not necessarily reflect the views of the Panel.

The Complainant and its affiliates design, develop, manufacture and sell quality fashionable footwear, clothing and accessories under the NINE WEST and 9 WEST trademarks. Sales in 2006 of NINE WEST branded footwear exceeded $600 million.

The disputed domain name is confusingly similar to the Complainant's trade mark because it consists of that mark with only the addition of the generic word "shoes". The confusion is intensified by the fact that the Complainant is first and foremost a footwear company. The addition of the generic top level domain ".com" is of no legal significance.

The Respondent has no rights or legitimate interests with respect to the disputed domain name. The Respondent has neither used nor made any demonstrable preparations to use the domain name in connection with a *bona fide* offering of goods or services and could not do so given the fame of the Complainant's NINE WEST marks in connection with footwear. Instead, the disputed domain name resolves to a website entitled "www.ninwestshoes.biz" with various "sponsored" links of both competitors of the Complainant and the Complainant itself. The sponsored links offer online shoe shopping. The use of a domain name for a link farm does not constitute a legitimate use of the domain.

The Respondent has concealed its identity by using the Private Whois service of its registrar. The Complainant believes, though, that the Respondent is not and has never been commonly known by the name NINE WEST or anything similar. The Respondent is not affiliated with the Complainant and has not sought or obtained consent to register the domain name.

The Respondent registered the disputed domain name in bad faith to associate itself with the NINE WEST brand and to trade off the Complainant's goodwill in the latter's related trade marks. Those marks have been widely used for footwear and fashion items for nearly three decades and have acquired a worldwide reputation. It cannot reasonably be argued that the Respondent would have combined "Nine West" with "shoes" without knowing of the Complainant's reputation and its marks in the footwear industry. Registration of a well-known trademark in conjunction with link farms constitutes bad faith. The Respondent intentionally concealed its identity by using the privacy protection service of the Registrar – another indicia of bad faith.

### B. Respondent

The Respondent did not submit a reply to the Complainant's contentions until after the expiry of the deadline for responding. For reasons that will become apparent, the Panel does not have to decide whether this late response should be considered since it makes no difference to the overall result of the case.

The Respondent submits that it purchased the domain name for a client or its representative that ultimately failed to pay. They suspect that it was the Complainant who instructed it to purchase the domain name. It claims that it approached the Complainant offering to sell the domain name for its reasonable out-of-pocket expenses. The Respondent claims to be unaware of the Complainant's trademark rights. The domain name, it says, is not confusingly similar "as the complainant was claiming the same to be from their trademarks." The domain is parked by the registrar of the domain name. The Respondent's use of the registrar's whois service is common practice to prevent the receipt of spam e-mails. As the Respondent has paid money to buy and renew the domain name, it claims to have the right to the domain name. The web page to which the disputed domain name resolves is that of the registrar. The Respondent says it has gained nothing from any click-throughs, and that there is no evidence of bad faith on the part of the Respondent.

## 6. Discussion and Findings

Under the Policy, the Complainant must prove that

(i) the domain name is identical or confusingly similar to a trademark or service mark in which it has rights; and

(ii) the Respondent has no rights or legitimate interests in respect of the domain name; and

(iii) the domain name has been registered and is being used in bad faith.

### A. Identical or Confusingly Similar

The dispute domain name consists of the Complainant's trademark NINE WEST with the addition of the word "shoes" and the generic top level domain ".com".

The Complainant's trademark NINE WEST has no particular meaning except to describe the Complainant's goods or in the unconnected world of navigation. The addition of the common generic word "shoes" to it does not remove the confusing similarity between the disputed domain name and the Complainant's trademark. Similarly, the addition of ".com" makes no difference to this.

The Panel was faced with the identical issue in *Calzaturificio Luigi Baracchino & C. S.p.A. v. Quickserf Kyriacos Kakofegitis* WIPO Case No. D2007-1489. It said:

"The disputed domain name consists of SAX and a descriptive word, "shoes." The former is identical to the Complainant's registered SAX trademark, and the latter refers to the goods in respect of which that mark is used.

It is well-established that descriptive or generic additions to a trademark, and particularly those that designate the goods or services in respect of which it is used, do not avoid confusing similarity of domain names and trademarks (See *inter alia Toyota Motor Sales USA v. Rafi Hamid dba ABC Automobile Buyer*, WIPO Case No. D2001-0032, involving 13 trademarks incorporating the word LEXUS and geographic, surnominal or generic descriptive words; and *PRL USA Holdings, Inc. v. LucasCobb*, WIPO Case No. D2006-0162, concerning the domain name <ralphlaurenpants.com>).

The Complainant's SAX trademark is both registered and used in respect of shoes. The Respondent's adoption of a domain name comprising the Complainant's trademark and a descriptive element denoting footwear is likely to give rise to confusion because it points to the field of goods in which the Complainant's mark is protected and used.

The Panel finds that the disputed domain name is confusingly similar to a trademark in which the Complainant has rights."

For the same reasons, the Panel in this case concludes that the domain name is confusingly similar to a trademark in which the Complainant has rights.

### B. Rights or Legitimate Interests

There is no evidence that the Complainant has authorized the Respondent to use any of its trademarks. There is no evidence that the Respondent has rights or legitimate interests in the name "NINE WEST". The absence of any ordinary meaning for the word, away from the world of navigation, would suggest otherwise.

The Respondent's late submission asserts without any evidence that the Complainant may have asked it to purchase the domain name. The relevance of this submission is not apparent. One would have expected the Respondent to have kept a record of such a request and to have submitted it to the Panel. In the absence of any such evidence, this point must be ignored.

The Respondent also argues that paying for the registration and renewal of the domain name entitles it to the domain name. If that submission was correct, the Policy would have no meaning since all respondents in domain name panel cases will have paid for the registration and renewal of the domain name. See *e.g. AT&T Corp. v. Swarthmore Associates LLC*, WIPO Case No. DBIZ2002-00077 and *Pharmacia & Upjohn Company v. Peoples Revolutionary Suicide Jazz Band*, WIPO Case No. D2000-0816. The Policy must be referring here to the Respondent having a right or legitimate interest in the name used in the domain name. The Respondent has not provided any evidence of that in this case.

For these reasons, and in the absence of evidence to the contrary, the Panel concludes that the Respondent has no rights or legitimate interests in respect of the domain name in issue.

## C. Registered and Used in Bad Faith

It is unlikely that the Respondent would have registered the disputed domain name unless it was aware of the Respondent's trade mark or activity using that name and its connection with shoes. The mark has no independent meaning except as a trading name for the Complainant's products or in the completely unrelated area of navigation.

The Respondent's answer to this point is to assert that somebody, possibly the Complainant, asked it to buy the domain name but failed to pay for it. It provides no evidence of any such instructions. In the absence of any evidence of such an instruction, the Panel is unable to accept the Respondent's assertion. One would have expected the Respondent to have submitted copies of it with their response if such an instruction had existed. The Panel considers it unlikely that the Respondent purchased the domain name without knowing of the Complainant's trademark and being aware that using the domain name would involve infringing that mark. The Panel considers it likely that the Respondent selected the domain name in order to attract the Complainant's customers to its website.

The same comments apply equally to the question of whether the Respondent is or has been using the domain name in bad faith. The Respondent argues that the website to which the domain name resolves is just the registrar's parking site. It remains the case, though, that the Respondent was aware that it was maintaining a domain name in breach of the Complainant's trademark. This presumably was to attract customers of the Complainant away from the Complainant's websites and onto the Respondent's for whatever reason.

For these reasons, the Panel concludes that the Respondent has both registered and is using the domain name in issue in bad faith.

## 7. Decision

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the domain name <ninewestshoes.com> be transferred to the Complainant.

Adam Samuel
Sole Panelist

Dated: January 21, 2008



## NATIONAL ARBITRATION FORUM

## DECISION

SR Holdings, Inc. v. Comdot Internet Services Private Limited
Claim Number: FA0709001079862

### PARTIES

Complainant is **SR Holdings, Inc.** ("Complainant"), represented by **Linda M. Novak**, of **Fish & Richardson P.C.**, 1717 Main Street, Suite 5000, Dallas, TX 75201.  Respondent is **Comdot Internet Services Private Limited.** ("Respondent"), 18/20 Akshay Co-Op. Soc, S.V. Patel Nagar, Mahada Versova, Andheri (W), Mumbai Maharashtra, 000000 IN.

### REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is **<sperryshoes.com>**, registered with **Lead Networks Domains Pvt. Ltd.**

### PANEL

The undersigned certifies that he has acted independently and impartially and to the best of his knowledge has no known conflict in serving as Panelist in this proceeding.

Bruce E. Meyerson as Panelist.

### PROCEDURAL HISTORY

Complainant submitted a Complaint to the National Arbitration Forum electronically on September 17, 2007; the National Arbitration Forum received a hard copy of the Complaint on September 18, 2007.

On October 15, 2007, Lead Networks Domains Pvt. Ltd. confirmed by e-mail to the National Arbitration Forum that the **<sperryshoes.com>** domain name is registered with Lead Networks Domains Pvt. Ltd. and that Respondent is the current registrant of the name.  Lead Networks Domains Pvt. Ltd. has verified that Respondent is bound by the Lead Networks Domains Pvt. Ltd. registration agreement and has thereby agreed to resolve domain-name disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On October 23, 2007, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of November 13, 2007 by which Respondent could file a response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@sperryshoes.com by e-mail.

Having received no timely response from Respondent, the National Arbitration Forum transmitted to the parties a Notification of Respondent Default.

On November 17, 2007, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed Bruce E. Meyerson as Panelist.

After the deadline, Respondent did respond to the Complaint. Although the National Arbitration Forum does not consider the Response to be in compliance with Paragraph 5 of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), it will nevertheless be considered. Complaint thereafter filed an Additional Submission. In light of the Panel's ruling in this matter it is unnecessary to consider Complainant's Additional Submission.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the National Arbitration Forum has discharged its responsibility under Paragraph 2(a) of the Rules "to employ reasonably available means calculated to achieve actual notice to Respondent." Therefore, the Panel may issue its decision based on the documents submitted and in accordance with the ICANN Policy, ICANN Rules, the National Arbitration Forum's Supplemental Rules and any rules and principles of law that the Panel deems applicable, without the benefit of any response from Respondent.

**RELIEF SOUGHT**

Complainant requests that the domain name be transferred from Respondent to Complainant.

**PARTIES' CONTENTIONS**

A. Complainant makes the following assertions:

1. Respondent's **<sperryshoes.com>** domain name is confusingly similar to Complainant's SPERRY mark.

2. Respondent does not have any rights or legitimate interests in the **<sperryshoes.com>** domain name.

3. Respondent registered and used the **<sperryshoes.com>** domain name in bad faith.

B. Respondent failed to submit a timely Response in this proceeding. Respondent's arguments will nevertheless be considered where appropriate to do so.

**FINDINGS**

Complainant has continuously used the SPERRY mark since as early as 1939 in connection with shoes, footwear, shirts, and retail footwear services. It currently holds registration of the SPERRY mark with the United States Patent and Trademark Office ("USPTO") (Reg. No. 732,519 issued June 5, 1962).

Respondent's **<sperryshoes.com>** domain name was registered on September 29, 2000 and resolves to a web directory featuring links to various third-parties, some of which offer products and services in competition with those offered under Complainant's mark.

**DISCUSSION**

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

In view of Respondent's failure to submit a timely response, the Panel shall decide this administrative proceeding on the basis of Complainant's undisputed representations pursuant to paragraphs 5(e), 14(a) and 15(a) of the Rules and draw such inferences it considers appropriate pursuant to paragraph 14(b) of the Rules.  The Panel is entitled to accept all reasonable allegations and inferences set forth in the Complaint as true unless the evidence is clearly contradictory.  *See Vertical Solutions Mgmt., Inc. v. webnet-marketing, inc.*, FA 95095 (Nat. Arb. Forum July 31, 2000) (holding that the respondent's failure to respond allows all reasonable inferences of fact in the allegations of the complaint to be deemed true); *see also Talk City, Inc. v. Robertson*, D2000-0009 (WIPO Feb. 29, 2000) ("In the absence of a response, it is appropriate to accept as true all allegations of the Complaint.").

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1)  the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
(2)  Respondent has no rights or legitimate interests in respect of the domain name; and
(3)  the domain name has been registered and is being used in bad faith.

## Identical and/or Confusingly Similar

Complainant has sufficiently established its rights in the SPERRY mark through registration with the USPTO pursuant to Policy ¶ 4(a)(i).  *See Innomed Techs., Inc. v. DRP Servs.*, FA 221171 (Nat. Arb. Forum Feb. 18, 2004) ("Registration of the NASAL-AIRE mark with the USPTO establishes Complainant's rights in the mark."); *see also U.S. Office of Pers. Mgmt. v. MS Tech. Inc.*, FA 198898 (Nat. Arb. Forum Dec. 9, 2003) ("[O]nce the USPTO has made a determination that a mark is registrable, by so issuing a registration, as indeed was the case here, an ICANN panel is not empowered to nor should it disturb that determination."); *see also Koninklijke KPN N.V. v. Telepathy Inc.*, D2001-0217 (WIPO May 7, 2001) (finding that the Policy does not require that the mark be registered in the country in which the respondent operates; therefore it is sufficient that the complainant can demonstrate a mark in some jurisdiction).

Respondent's <sperryshoes.com> domain name contains Complainant's SPERRY mark in its entirety and then includes the generic term "shoes," which has an obvious relationship to the products offered under Complainant's mark.  The disputed domain name also includes the generic top-level domain ("gTLD") ".com."  The inclusion of a gTLD and a generic descriptive term does not distinguish a disputed domain name from a mark under the Policy.  As a result, the Panel finds that pursuant to Policy ¶ 4(a)(i), Respondent's <sperryshoes.com> domain name is confusingly similar to Complainant's SPERRY mark.  *See Rollerblade, Inc. v. McCrady*, D2000-0429 (WIPO June 25, 2000) (finding that the top level of the domain name such as ".net" or ".com" does not affect the domain name for the purpose of determining whether it is identical or confusingly similar); *see also Brown & Bigelow, Inc. v. Rodela*, FA 96466 (Nat. Arb. Forum Mar. 5, 2001) (finding that the <hoylecasino.net> domain name is confusingly similar to the complainant's HOYLE mark, and that the addition of "casino," a generic word describing the type of business in which the complainant is engaged, does not take the disputed domain name

out of the realm of confusing similarity).

The Panel concludes that Complainant has satisfied Policy ¶ 4(a)(i). [1]

## Rights or Legitimate Interests

Under Policy ¶ 4(a)(ii), Complainant must first establish a *prima facie* case that Respondent has no rights or legitimate interests in the disputed domain name. *See VeriSign Inc. v. VeneSign C.A.*, D2000-0303 (WIPO June 28, 2000) ("Respondent's default, however, does not lead to an automatic ruling for Complainant. Complainant still must establish a prima facie case showing that under the Uniform Domain Name Dispute Resolution Policy it is entitled to a transfer of the domain name."). The Panel finds that Complainant has established a *prima facie* case and that the burden is thus shifted to Respondent to show that it does have rights or legitimate interests in the disputed domain name. *See G.D. Searle v. Martin Mktg.*, FA 118277 (Nat. Arb. Forum Oct. 1, 2002) ("Because Complainant's Submission constitutes a *prima facie* case under the Policy, the burden effectively shifts to Respondent."); *see also Do The Hustle, LLC v. Tropic Web*, D2000-0624 (WIPO Aug. 21, 2000) (holding that, where the complainant has asserted that the respondent has no rights or legitimate interests with respect to the domain name, it is incumbent on the respondent to come forward with concrete evidence rebutting this assertion because this information is "uniquely within the knowledge and control of the respondent").

No timely Response has been submitted to the Complaint. Accordingly, the Panel presumes that Respondent has no rights or legitimate interests, but will still examine the record in consideration of the factors listed under Policy ¶ 4(c). *See G.D. Searle v. Martin Mktg.*, FA 118277 (Nat. Arb. Forum Oct. 1, 2002) ("Respondent's failure to respond means that Respondent has not presented any circumstances that would promote its rights or legitimate interests in the subject domain name under Policy ¶ 4(a)(ii)."); *see also Canadian Imperial Bank of Commerce v. D3M Virtual Reality Inc.*, AF-0336 (eResolution Sept. 23, 2000) (finding no rights or legitimate interests where no such right or interest was immediately apparent to the panel and the respondent did not come forward to suggest any right or interest it may have possessed).

Neither Respondent's WHOIS information nor anything else in the record gives any indication that Respondent is or ever was commonly known by the disputed domain name. Moreover, Complainant has not granted permission to Respondent to use its mark in any way. Absent any affirmative evidence to the contrary, the Panel finds pursuant to Policy ¶ 4(c)(ii), that Respondent is not commonly known by the **<sperryshoes.com>** domain name. *See Tercent Inc. v. Lee Yi*, FA 139720 (Nat. Arb. Forum Feb. 10, 2003) (stating "nothing in Respondent's WHOIS information implies that Respondent is 'commonly known by' the disputed domain name" as one factor in determining that Policy ¶ 4(c)(ii) does not apply); *see also Compagnie de Saint Gobain v. Com-Union Corp.*, D2000-0020 (WIPO Mar. 14, 2000) (finding no rights or legitimate interest where the respondent was not commonly known by the mark and never applied for a license or permission from the complainant to use the trademarked name).

Respondent's **<sperryshoes.com>** domain name contains Complainant's mark in its entirety and resolves to a web directory that features links to various third-parties, many of which offer products and services in competition with those offered under Complainant's SPERRY mark. The Panel finds this to be neither a *bona fide* offering of goods or services pursuant to Policy ¶ 4 (c)(i) nor a legitimate noncommercial or fair use pursuant to Policy ¶ 4(c)(iii). *See eBay Inc. v. Hong*, D2000-1633 (WIPO Jan. 18, 2001) (stating that the respondent's use of the complainant's entire mark in domain names makes it difficult to infer a legitimate use); *see also TM Acquisition*

*Corp. v. Sign Guards*, FA 132439 (Nat. Arb. Forum Dec. 31, 2002) (finding that the respondent's diversionary use of the complainant's marks to send Internet users to a website which displayed a series of links, some of which linked to the complainant's competitors, was not a *bona fide* offering of goods or services); *see also Glaxo Group Ltd. v. WWW Zban*, FA 203164 (Nat. Arb. Forum Dec. 1, 2003) (finding that the respondent was not using the domain name within the parameters of Policy ¶ 4(c)(i) or (iii) because the respondent used the domain name to take advantage of the complainant's mark by diverting Internet users to a competing commercial site).

[2]

The Panel concludes that Complainant has satisfied Policy ¶ 4(a)(ii).

## Registration and Use in Bad Faith

Respondent's **<sperryshoes.com>** domain name features various links to third-parties, many of which offer services and products in direct competition with those offered under Complainant's mark. The Panel finds this to establish Respondent's bad faith registration and use of the disputed domain name to disrupt Complainant's business pursuant to Policy ¶ 4(b)(iii). *See S. Exposure v. S. Exposure, Inc.*, FA 94864 (Nat. Arb. Forum July 18, 2000) (finding the respondent acted in bad faith by attracting Internet users to a website that competes with the complainant's business); *see also Disney Enters., Inc. v. Noel*, FA 198805 (Nat. Arb. Forum Nov. 11, 2003) ("Respondent registered a domain name confusingly similar to Complainant's mark to divert Internet users to a competitor's website. It is a reasonable inference that Respondent's purpose of registration and use was to either disrupt or create confusion for Complainant's business in bad faith pursuant to Policy ¶¶ 4(b)(iii) [and] (iv).").

Furthermore, the Panel presumes that Respondent is commercially benefiting from every misdirected Internet user who clicks on a link on Respondent's website that resolves from the disputed domain name through the use of "click-through" fees. Consequently, the Panel finds this to be additional evidence of Respondent's bad faith registration and use pursuant to Policy ¶ 4(b)(iv). *See Associated Newspapers Ltd. v. Domain Manager*, FA 201976 (Nat. Arb. Forum Nov. 19, 2003) ("Respondent's prior use of the <mailonsunday.com> domain name is evidence of bad faith pursuant to Policy ¶ 4(b)(iv) because the domain name provided links to Complainant's competitors and Respondent presumably commercially benefited from the misleading domain name by receiving 'click-through-fees.'"); *see also Kmart v. Khan*, FA 127708 (Nat. Arb. Forum Nov. 22, 2002) (finding that if the respondent profits from its diversionary use of the complainant's mark when the domain name resolves to commercial websites and the respondent fails to contest the complaint, it may be concluded that the respondent is using the domain name in bad faith pursuant to Policy ¶ 4(b)(iv)).

[3]

The Panel concludes that Complainant has satisfied Policy ¶ 4(a)(iii).

**DECISION**

Having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is Ordered that the **<sperryshoes.com>** domain name be **TRANSFERRED** from Respondent to Complainant.

Bruce E. Meyerson, Panelist
Dated:  December 3, 2007

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page

**NATIONAL ARBITRATION FORUM**

---

[1]
    Respondent states that "Sperry" is "such a common word that the complainant cannot claim any rights to the said word."  Respondent's argument ignores that fact that Complaint has established its rights within the meaning of Policy ¶ 4(a)(i) by registration with the USPTO.
[2]
    Respondent states that it has a legitimate interest in the domain name because "as they have paid a huge sum to purchase the domain from the previous owner."  This is not a reason that qualifies under the Policy as constituting "rights or legitimate interests."
[3]
    Respondent denies that it is using the site as claimed in the Complaint.  An inspection of the site reveals that this statement is false.



# WIPO Arbitration and Mediation Center

### ADMINISTRATIVE PANEL DECISION

### Swarovski Aktiengesellschaft v. Comdot Internet Services Private Limited

### Case No. D2007-1788

## 1. The Parties

Complainant is Swarovski Aktiengesellschaft, of Triesen, Liechtenstein, represented by SafeNames Ltd., of United Kingdom of Great Britain and Northern Ireland.

The Respondent is Comdot Internet Services Private Limited, of Maharashtra, India.

## 2. The Domain Name and Registrar

The disputed domain name <wwwswarovski.com> is registered with Lead Networks Domains Pvt. Ltd..

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on December 3, 2007. On December 6, 2007, the Center transmitted by email to Lead Networks Domains Pvt. Ltd. a request for registrar verification in connection with the domain name at issue. On December 14, 2007, Lead Networks Domains Pvt. Ltd. transmitted by email to the Center its verification response stating that the above Respondent is listed as the registrant and providing the contact details. In response to a notification by the Center that the Complaint was administratively deficient, Complainant filed an amendment to the Complaint on December 19, 2007. The Center verified that the Complaint, together with the amendment to the Complaint, satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified Respondent of the Complaint, and the proceedings commenced on December 21, 2007. In accordance with the Rules, paragraph 5(a), the due date for Response was January 10, 2008. Respondent did not submit any response by this date. Accordingly, the Center notified Respondent's default on January 11, 2008.

The Center appointed Sandra J. Franklin as the sole panelist in this matter on January 22, 2008. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

On January 15, 2008 Respondent submitted a belated email response without giving reasons for this delay. As the email was received prior to the Panel's appointment, in the interests of having before it as complete a record as possible, the Panel has had appropriate regard to the content of the document and evidentiary weight thereof. Questions of timeliness and formal compliance with the Rules aside, the Panel notes that its contents do not in any case affect the Panel's finding in this case.

## 4. Factual Background

Complainant Swarovski is the distributor of renowned Swarovski crystal glass and gem stone products, first manufactured in Austria in 1895. Complainant holds numerous registered trademarks for SWAROVSKI, including U.S. Registration No. 1739479, issued September 22, 1992. Complainant holds the domain name <swarvoski.com>, among others incorporating the mark SWAROVSKI. Complainant registered its domain name <swarovski.in> in India on February 14, 2005. Respondent registered the disputed domain name <wwwswarovski.com> on May 7, 2005.

## 5. Parties' Contentions

Complainant contends, and Respondent's late response denies, that the disputed domain name is confusingly similar with the SWAROVSKI mark in which it has rights, that Respondent has no rights or legitimate interests in the disputed domain name, and that Respondent registered and uses the disputed domain name in bad faith.

## 6. Discussion and Findings

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

In view of Respondent's failure to submit a timely response, the Panel would be entitled to decide this administrative proceeding on the basis of Complainant's undisputed representations pursuant to paragraphs 5(e), 14(a) and 15(a) of the Rules and draw such inferences it considers appropriate pursuant to paragraph 14(b) of the Rules. The Panel would also be entitled to accept all reasonable allegations and inferences set forth in the Complaint as true unless the evidence is clearly contradictory. See *Vertical Solutions Mgmt., Inc. v. webnet-marketing, inc.*, NAF Case No.95095 (holding that the respondent's failure to respond allows all reasonable inferences of fact in the allegations of the complaint to be deemed true); see also *Talk City, Inc. v. Robertson*, WIPO Case No. D2000-0009 ("In the absence of a response, it is appropriate to accept as true all allegations of the Complaint."). However in the interest of completeness, the Panel has at least considered Respondent's late-filed response.

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(2) Respondent has no rights or legitimate interests in respect of the domain name; and

(3) the domain name has been registered and is being used in bad faith.

### A. Identical or Confusingly Similar

Complainant has established sufficient rights in the SWAROVSKI mark through registration of the mark with the USPTO pursuant to paragraph 4(a)(i) of the Policy. See *Innomed Techs., Inc. v. DRP Servs.*, NAF Case No. 221171 ("Registration of the NASAL-AIRE mark with the USPTO establishes Complainant's rights in the mark."); see also *Vivendi Universal Games v. XBNetVentures Inc.*, NAF Case No. 198803 ("Complainant's federal trademark registrations establish Complainant's rights in the BLIZZARD mark.").

The Panel finds that the disputed domain name is confusingly similar to Complainant's SWAROVSKI mark pursuant to paragraph 4(a)(i) of the Policy, regardless of the addition of the generic top-level domain ".com.". See *Pomellato S.p.A v. Tonetti*, WIPO Case No. D2000-0493 (finding <pomellato.com> identical to the complainant's mark because the generic top-level domain (gTLD) ".com" after the name POMELLATO is not relevant). Likewise, adding "www" to the beginning of the mark SWAROVSKI does nothing to distinguish the domain name from Complainant's mark. See *Google, Inc. v. wwwgoogle.com and Jimmy Siavesh Behain*, WIPO Case No. D2000-1240.

The Panel finds that paragraph 4(a)(i) of the Policy has been satisfied

## B. Rights or Legitimate Interests

Complainant asserts that Respondent lacks rights and legitimate interests in the <wwwswarovsi.com> domain name. Once Complainant has established a *prima facie* case supporting its allegations, as it has in this case, the burden shifts to Respondent to prove that it does have rights or legitimate interests pursuant to paragraph 4(a)(ii) of the Policy. See *Clerical Med. Inv. Group Ltd. v. Clericalmedical.com*, WIPO Case No. D2000-1228 (finding that, under certain circumstances, the mere assertion by the complainant that the respondent has no right or legitimate interest is sufficient to shift the burden of proof to the respondent to demonstrate that such a right or legitimate interest does exist); see also *Do The Hustle, LLC v. Tropic Web*, WIPO Case No. D2000-0624 (holding that once the complainant asserts that the respondent has no rights or legitimate interests with respect to the domain, the burden shifts to the respondent to provide "concrete evidence that it has rights to or legitimate interests in the domain name at issue").

Nothing in the record persuades the Panel to conclude that Respondent has rights or legitimate interests in the disputed domain name.

Respondent is using the <wwwswarovski.com> domain name to resolve to a commercial website that features links to various websites in direct competition with Complainant. Respondent presumably receives referral fees from advertisers listed on Respondent's website. The Panel finds that Respondent's use of the disputed domain name does not constitute a *bona fide* offering of goods or services pursuant to paragraph 4(c)(i) of the Policy, or a legitimate noncommercial or fair use of the disputed domain name pursuant to paragraph 4(c)(iii) of the Policy. See *Wells Fargo & Co. v. Lin Shun Shing*, NAF Case No. 205699 (finding that using a domain name to direct Internet traffic to a website featuring pop-up advertisements and links to various third-party websites is neither a *bona fide* offering of goods or services under paragraph 4(c)(i) of the Policy nor a legitimate noncommercial or fair use under paragraph 4(c)(iii) of the Policy because the registrant presumably receives compensation for each misdirected Internet user); see also *Tercent Inc. v. Lee Yi*, NAF Case No. 139720 (holding that the respondent's use of the disputed domain name to host a series of hyperlinks and a banner advertisement was neither a *bona fide* offering of goods or services nor a legitimate noncommercial or fair use of the domain name).

There is no evidence that suggests that Respondent is commonly known by the <wwwswarovski.com> domain name. Thus, the Panel finds that Respondent lacks rights and legitimate interests in the disputed domain name pursuant to paragraph 4(c)(ii) of the Policy. See *Gallup, Inc. v. Amish Country Store*, NAF Case No. 96209 (finding that the respondent does not have rights in a domain name when the respondent is not known by the mark); see also *Tercent Inc. v. Lee Yi*, NAF Case No. 139720 (stating "nothing in Respondent's WHOIS information implies that Respondent is 'commonly known by' the disputed domain name" as one factor in determining that paragraph 4(c)(ii) of the Policy does not apply).

The Panel finds that paragraph 4(a)(ii) of the Policy has been satisfied.

## C. Registered and Used in Bad Faith

The disputed domain name resolves to a website that features links to Complainant's competitors. The Panel finds that such use constitutes bad faith registration and use of the disputed domain name under paragraph 4(b)(iii) of the Policy, as it is intended primarily to disrupt Complainant's business. See *EBAY, Inc. v. MEOdesigns*, WIPO Case No. D2000-1368 (finding that the respondent registered and used the domain name <eebay.com> in bad faith where the respondent has used the domain name to promote competing auction sites); see also *Puckett, Individually v. Miller*, WIPO Case No. D2000-0297 (finding that the respondent has diverted business from the complainant to a competitor's website in violation of paragraph 4(b)(iii) of the Policy).

Respondent presumably receives referral fees from advertisers listed on Respondent's website. Such use is an intentional attempt to attract Internet users for commercial gain by creating a likelihood of confusion with Complainant's SWAROVSKI mark as to the source, sponsorship, and affiliation of Respondent's website that resolves from the disputed domain name. The Panel therefore finds that Respondent has engaged in bad faith registration and use pursuant to paragraph 4(b)(iv)of the Policy. See *H-D Michigan, Inc. v. Petersons Auto.*, NAF Case No. 135608 (finding that the disputed domain name was registered and used in bad faith pursuant to paragraph 4(b)(iv) of the Policy through the respondent's registration and use of the infringing domain name to intentionally attempt to attract Internet users to its fraudulent website by using the

complainant's famous marks and likeness).

Furthermore, the Respondent contacted the Complainant and requested $1,350 for the transfer of the domain name to Complainant, an amount in excess of its out-of-pocket costs. This also constitutes bad faith under paragraph 4(b)(i) of the Policy.

The Panel finds that paragraph 4(a)(iii) of the Policy has been satisfied.

## 7. Decision

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the domain name <wwwswarovksi.com> be transferred to Complainant.

Sandra J. Franklin
Sole Panelist

Dated: February 5, 2008